The case we're going to hear, we're going to call is United States v. Mondragon, Mondragon. And we'll hear first from Mr. Brown. Now, you and I have met before this week. Yes, sir. Good to have you back. Yes, sir. Thank you. Thank you. Hopefully, I'll have a better day today. Well, you had a good day. I remember a very persuasive argument. Well, thank you, Your Honor. I'm Richard Brown. I'm from the Western District of North Carolina. In 2014, Mario Mondragon was charged in a two-count bill of indictment alleging conspiracy to possess with intent to distribute methamphetamine, as well as possession with intent to distribute methamphetamine. He pled not guilty, had a jury trial. In March of 2015, he was found guilty of both counts. A PSR was subsequently prepared, and Mondragon was given a two-point enhancement alleging he possessed a firearm during the course of the conspiracy. Mondragon objected. The court overruled his objection and applied the two-point enhancement Mondragon appeals. The issue is whether the district court erred in actually applying the two-point enhancement. As the court knows- Wasn't your client also convicted of conspiracy? He was convicted of – yes. Yes, he was. Two counts. He was convicted of two counts. One count of conspiracy and one count of possession with intent to distribute. In order to apply the two-point enhancement, the court well knows that the government must show, number one, that a firearm or weapon was possessed, and it was possessed in connection with drug activity. I'm arguing today that the government failed to show either. The government attempted to make it showing by offering two witnesses or by offering information from two different co-conspirators, which brings me to the fact pattern here that almost – is almost identical to the fact pattern in McAllister. But the problem is McAllister did not have a conspiracy conviction. And Carroll was only known to this man as part of the conspiracy. In other words, all of the relationship between your client and Carroll in this case was during the course of the conspiracy. I don't believe that is necessarily true. That is true because that's when he got to know him, in this case, when they got together to distribute methamphetamine. And I agree with that, however – And Carroll testified that he had the gun and broke it down in front of him, whereas in McAllister the testimony was – the potential was the gun was used in the past or any other time in connection with a single transaction. Okay. Two things that I disagree with. Carroll never testified about Mondragon having a gun. Absolutely no testimony. Tell me what the story is about when he broke down the gun in front of him. Yes, sir. Where did that come in? That came in at sentencing. Right. The prosecution – what the PSR said at some point in time in an investigation, Carroll reported to a DEA agent that Mondragon had broken down a gun. At his house? At his house, yes, yes. Which apparently the government says was the place where Carroll would be involved in methamphetamine drug activity. Not necessarily. What does that mean, not necessarily? Either it was or it wasn't. We don't know why Mondragon was at Carroll's house. Well, first of all, let's start with the allegation that this occurred at a residence that was used for methamphetamine drug activity. Do you dispute that? Yes. Okay. It is not in Carroll's testimony. Let me give the Court this. The prosecution's – It doesn't have to be. These two guys were co-conspirators. Their sole relationship arose out of the co-conspiracy to distribute meth. They are together in a private home. And Carroll says he saw a gun and sees him break down the gun. And then they talk about how he threatens and uses the coercion to keep people paying and that type of thing. I don't see – the whole relationship is conspiratorial. The DEA agent said that Carroll said that he – That's all we need is evidence of – Well, it was never offered into evidence. It's in the pre-sentence report. It's in the pre-sentence report, Your Honor. It was objected to, but I would offer to the Court. Carroll never mentioned a gun when he testified. There was no mention of a gun. You make a sentence to the – you make a challenge to the sentence. That's where it would be was in the pre-hearing. It would never come in in the trial. Yes, but there has to be evidence of – if you look at McAllister, McAllister deemed that the weapon enhancement was inapplicable, where the only evidence there was a witness statement. Here – But there was no conspiracy charged in McAllister. That is true. The possession of a gun could have taken place three years before the transaction in McAllister. There was nothing to link it to the offense in action – in case. Here, the evidence came from Carroll, who was in a conspiratorial relationship with – during his entire time with your client, Mondragon. Well, let me first say that even if – well, let me back up. I think that there is an assumption here that the only relationship that Carroll had with Mondragon was a drug-type relationship. In the record, Carroll alludes to Mondragon as being a friend. Well, they were friends, but they came to meet each other as in the formation of the conspiracy in distributing methamphetamine. And they continued that continuous conspiracy over this period of time when they were at Carroll's house and Mondragon had a gun and showed him the gun and talked about how they had to keep people threatened, that type of thing. Being friends does not mean you're not co-conspirators. I bet you a lot of co-conspirators are friends. I agree, but there has to be a nexus even if – even if you believe that there was a gun present. Well, the government's theory, though, is it doesn't matter what they were doing at the time of this alleged breaking down of the weapon. As I understand it, your client and Mr. Carroll could have been watching a football game, could have been playing tiddlywinks. And so long as he was breaking down that revolver during the time period when they were involved in this conspiracy, the government says that's enough. So what's your best case for why that isn't enough? The government also has to prove that it was possessed in connection with drug activity. But the point of the government's argument is that once you're in the conspiracy, anything that you do during that time period is part of the conspiracy. I disagree with that. And that might be wrong, but what's your best case for saying it is wrong? If a gentleman – well, we won't call him a gentleman. I need a case, though. Oh, I'm sorry. I'm interested in hypothetical if you don't have a case, but if you have an actual case that some court has come down and said that. Well, in McAllister. McAllister's not a conspiracy. I don't think it matters whether it was a conspiracy. It is because the evidence in McAllister did not convincingly connect the gun to the single transaction. The guy said in the past, if a person comes in and said, I saw Mondragon with a gun 10 years ago, and the conspiracy only started five years ago, we would say that evidence is inadequate, wouldn't we? I think you would. In fact, that is the case. That's McAllister. That is the exact case here for Young. And I'll get back to Carroll. No, no, no, let's stick with Carroll. That's the one you have to solve. All right. The prosecutor stated that there was testimony from Carroll that he had seen Mondragon break down a revolver at his residence. And let me say this. If the prosecutor gave that information, that there was testimony from him to the district court judge, and if the district court judge relied on that information, I believe it's problematic because Carroll did not testify. Well, but the only objection at sentencing was not that he didn't testify. The objection was, and I'll just read it to you, there's no credible evidence or no evidence at all that the evidence about his possessing the gun had anything at all to do with any drugs. So essentially the concession was made that it happened. The argument is that it doesn't matter because this had nothing at all to do with their drug conspiracy. And I think that also what we still have to do is go in and see, whether it's a conspiracy or not, is what was offered to the court. The pre-sentence report. I'm sorry. The court relied on the pre-sentence report because you don't go into sentencing evidence during the course of the trial unless it's had to be part of the element of the offense. But here we say also in connection with that, Carroll also indicated that Mondragon told Carroll that he, Mondragon, had killed two individuals from his town and could not return. This is during the course of when he's breaking down the gun. The judge did not apply that enhancement because the judge found that he was, I think the judge quoted, puffing off or something to that. Sure. He may not have done that, but the point is the whole purpose of the gun and the conversation is to maintain control over your drug distribution. Well, even if you assume that he has control, I would ask the court if it would consider the fact that the gun was not, for lack of a better word, operable. It was not being put together and bullets put in it. It was being taken apart, which is actually less threatening if the court is suggesting that. What I mean, the conspiracy went on. It wasn't at that very moment. It wasn't at that exact moment. Do you contend that it wasn't a real gun? No, no, no. I contend that if the court believes there was a gun, the court has to also acknowledge the fact that the gun was being broken down and not put together. What do you consider breaking down? You break down a gun to clean it, don't you? Isn't that the term of art? You break down a gun, you take it apart to clean it and then reassemble it? I don't think there was any evidence of reassembly. In fact. How about before he broke down the gun? We don't have any evidence of what. He's in the apartment and he's breaking it down there, so he had to start with a gun in an intact state. And I guess we are assuming these facts and we are assuming that there was a gun, but I still rely on, Carroll never testified to that. It was a. He did. I just read you the passage where he testified that. He told the agent that in connection with the pre-sentence report. That is not testimony. He never said that. Who said we need testimony? Well, I think. The pre-sentence report will give you facts unless you put it at issue. But there was no issue put to the fact that that was done. I think that. There was a legal argument that that didn't show a connection with drugs. If McAllister and I and again, I keep going back to McAllister. If McAllister states that the only evidence of the enhancement was a witness's statement. I think that we can hold that here. The only evidence that there was a gun or that any gun appeared was a statement. And if McAllister didn't hold that to be enough, I don't think we should hold that to be enough here. In fact, I would tell the court that the. Well, but the reason why it wasn't enough in McAllister is that the statement was not connected to that single. That drug transaction in question. But again, we have this conspiracy allegation in which expands the potential window of conduct. And it appears that at least in this record, as Judge Niemeyer has pointed out, your client knew Carol solely during the course of the conspiracy. Not at any time before and certainly not at any time after the conspiracy ended. If the witness's statement was not just the statement that was read into evidence, evidence was not enough for the court in McAllister. I just can't put the two together to see how it would be enough here. We're talking still about a witness's statement, regardless of what that statement may be. Is that enough to persuade the court? It was not in McAllister. And I would argue that it's not here. Carol had every opportunity to testify that he had a gun. I saw him. It puts it in a better perspective because now he's on an oath. He can be cross-examined by it. Carol was never brought to sentencing, nor was the DEA agent brought in court during sentencing either. All we have is a pre-sentence report stating that Carol, that a DEA agent said that Carol said. We don't even have the reports, Your Honor. At least in McAllister, they had a report, they read the report into evidence. Here, there is nothing there that even reports that Carol says it, other than the representation by the district attorney. No, it's a pre-sentence report, which is part of it. I'm sorry, I'm sorry. Yes, yes. Other than the representation by the pre-sentence report. And we accept the facts in the pre-sentence report, unless they're challenged, and then the court has to handle that. And I think that challenging the 2D1.1 enhancement challenges any allegations that were there. Well, what it says is this enhancement is objected to as the firearm in question had no relationship to any drugs. I think that's what the objection was. That's what it says in the paper that you submitted. Yes, yes. Not that there was no firearm. Well, it's in question. No, the firearm that is an issue in this case, the firearm that is in question. And I agree. It doesn't say you're questioning the firearm. It doesn't acknowledge that there was indeed what it should have said was an alleged firearm. But I don't believe it acknowledges that there was a firearm. And I don't want to, I guess, get into arguing the facts over again. But even assuming that there was a firearm, how it got into, I don't want to say evidence, but how it got to the judge was the same way that the evidence got to the judge in McAllister, and McAllister didn't feel it was enough. All right. Thank you. Thank you, Your Honor. Ms. Greenough. May it please the Court. Elizabeth Greenough on behalf of the United States. I think you've hit on an important point here, Your Honors. In fact, during the sentencing hearing, Mr. Mondragon's attorney conceded that at some point in time he had possession of a firearm. So the dispute here is whether or not, in his mind, it related to the drug trafficking. But in fact, as the government ---- Your argument is the conspiracy is an ongoing violation. He had it during the conspiracy. Exactly. Is that about the case? Yes. All right. You made an allegation in your brief that this was a ---- Carol's residence was a place of drug activity, and I frankly struggled to find any evidence of that in the record. So I'll ask you about that. But under your theory, it doesn't matter, right? Correct. So they could have been watching a football game, as I said, having a cookout, playing tiddlywinks, poker, the gun comes out, end of story. Correct. At that point, though, the guidelines ---- What's the case for that? I asked Mr. Brown that. What's your case to support that? The Slade case, Your Honor, where a co-conspirator testified that he saw the defendant with guns during their drug trafficking activities. There's a lot more at Slade than there is here. That's true. There was also a gun possession there. The Wetwatonna case from the Seventh Circuit is very clear about the fact that anything that happens during the conspiracy can be attributed to the defendant. What's your answer to the question that Judge Diaz raised about evidence that the Carol residence was used for methamphetamine? So unfortunately, that was the government's argument, but that evidence did not actually come in during the trial. That was an argument that was made by the prosecutor at sentencing. But it's also important to remember here that once the government makes that showing, Mondragon has the opportunity to show that any connection with the drug offense, that it was clearly improbable. So it's not just that we ---- I'm not sure how you could show that given your theory of the scope of the conspiracy and the connection here. Well, correct. So I think here he can't show that, but I'm just saying that if you're concerned with the scope of the conspiracy bringing everything in, there is a provision in the guidelines that would provide for an opportunity for the defendant to show, no, it's clearly improbable that this firearm was possessed in connection with the offense. So I guess an example of that is a hunting rifle that would have nothing to do with the conspiracy. Exactly. And that's the example that the guidelines commentary sets forth. So in the government's position, this is exactly the type of situation that the sentencing commission created this enhancement for in order to dissuade people from using firearms when they're dealing with drugs because it creates a danger of violent conduct. If the court has no further questions, we respectfully request that you affirm the decision of the district court. Anything further, Mr. Brown? Thank you. All right. We'll come down in Greek council and then proceed on to the last. Oh, yes. I want to recognize you again. Every time you show up, you're in service of the court, and I want to recognize your court appointment. It's very valuable to have your service. Thank you. Yeah.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Albert Diaz